# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**BRIDGETTE BURGIN,**                    }
                                         }
    **Plaintiff,**            }
                                         }
**v.**                                   }     **Case No.:  2:07-CV-1425-RDP**
                                         }
**TIM LAHAYE, et al.,**                  }
                                         }
    **Defendants.**           }

## MEMORANDUM OPINION

Before the court is Defendant Knoxville Writers' Guild's ("the Guild") Motion to Dismiss (Doc. # 59), filed on April 1, 2008.  Plaintiff filed a response (Doc. # 66) on April 28, 2008.  The Guild filed a reply (Doc. # 71) on May 8, 2008, bringing the issues before the court under submission.  For the reasons stated herein, the court finds that the Guild's motion is due to be granted.

The Guild moves to dismiss on two grounds: (1) it claims that the court lacks personal jurisdiction over the Guild and (2) that Plaintiff's Third Amended Complaint (Doc. # 49) fails to state a claim against the Guild for which this court may grant relief.  The court will address these areas in turn.

## I.    Personal Jurisdiction

Determining whether this court has specific personal jurisdiction over a nonresident defendant requires a two-step analysis.  *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005).

> First, we determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute.  Second, we examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the

> Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice.

*Id.* (citations and quotations omitted).  Because Alabama's long-arm statute authorizes courts to assert *in personam* jurisdiction to the full extent authorized by the Due Process Clause, the only question before the court is whether the Constitution gives this court jurisdiction over the Guild. ALA. R. CIV. P. 4.2 (Alabama's long-arm statute); *Mut. Serv. Ins. Co. v. Frit Indus., Inc*., 358 F.3d 1312, 1319 (11th Cir. 2004).  Accordingly, the court will analyze (1) the Guild's contacts with Alabama and (2) the fairness of asserting jurisdiction over it.  Plaintiff bears the burden of establishing a *prima facie* case of jurisdiction, and the court accepts the uncontroverted facts contained in her pleadings as true.  *Morris v. SSE, Inc*., 843 F.2d 489, 492 (11th Cir. 1988).

a.    **Minimum Contacts**

Plaintiff alleges that the Guild intentionally and purposefully solicited manuscripts from writers around the country through its website, its advertisements in national publications, and through letters sent to writers and professors in Alabama.  (Doc. # 66 at 10-11).  She also asserts that she and Guild members "exchanged numerous phone calls, postal letters, and emails, all done with Plaintiff resident in Alabama."  (*Id*. at 10).  Defendant makes two arguments in response.  First, it relies on affidavits to contest the factual bases of Plaintiff's assertion of jurisdiction.  Second, it argues that even if Plaintiff's version of the facts is true, the contacts are insufficient to support personal jurisdiction as a matter of law.

### 1.      The Sufficiency of Plaintiff's Factual Allegations

As stated above, Plaintiff bears the burden of showing the existence of personal jurisdiction.

*Morris*, 843 F.2d at 492.  The Eleventh Circuit has explained how Plaintiff can meet that burden:

> A *prima facie* case is established if the plaintiff presents sufficient evidence to defeat
> a motion for a directed verdict. The district court must construe the allegations in the
> complaint as true, **to the extent they are uncontroverted by defendant's affidavits
> or deposition testimony**.  In addition, where the evidence presented by the parties'
> affidavits and deposition testimony conflicts, the court must construe all reasonable
> inferences in favor of the non-movant plaintiff.

*Id.* (emphasis added and citations omitted).  Accordingly, the court may only accept the factual

averments of the Third Amended Complaint as true to the extent that the Guild has not produced

evidence to rebut those averments.  The Guild has introduced two affidavits challenging Plaintiff's

factual assertions.  For example, the Guild admits to receiving only one of the manuscripts that

Plaintiff alleges the Guild negligently entrusted to others.  (Doc. # 59-5, Affidavit of Brian Griffin

¶ 8).  Also, the Guild denies that Christine Mersch (now Christine DenHerder) and Joyce Harrison

have ever been associated with the Guild.  (Doc. # 59-3, Affidavit of Robert Lydick ¶¶ 6, 8).  Also,

and importantly, Brian Griffin denies ever initiating any personal communication with Plaintiff other

than a form letter sent to inform her of the winner of the Peter Taylor Prize in 2004 and 2005.

(Griffin Aff. ¶¶ 10-11).

Plaintiff has submitted no affidavits or other evidence to support the factual allegations in

her pleadings.  The court has nothing to contradict the Guild's affidavits and will thus accept them

as true.  However, it is important to recognize that the Guild does not dispute that it sent letters to

individuals in Alabama soliciting entries to the Peter Taylor Prize, that it advertized the Peter Taylor

Prize nationally, or that it maintains a mostly "passive" website accessible anywhere in the country.

While these contacts with Alabama are very limited, they could provide a basis for personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n.18 (1985) ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction"). As a result, even though Plaintiff submitted no affidavits, the Third Amended Complaint presents uncontested allegations that may constitute sufficient minimum contacts to support this court's jurisdiction over the Guild.

### 2.  Whether the Guild's Activities Constitute Sufficient Minimum Contacts

Although Plaintiff's Third Amended Complaint is not *per se* inadequate to justify finding that this court has specific personal jurisdiction over the Guild, the court finds that Plaintiff has not shown that her claims are sufficiently related to the Guild's contacts with Alabama. Minimum contacts sufficient to support specific jurisdiction must meet three criteria:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

*McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005). Plaintiff's failure to establish the first and last of these factors is fatal to her contention that the Guild has sufficient minimum contacts with Alabama to justify asserting personal jurisdiction over it.

Nowhere does Plaintiff state how she discovered the Peter Taylor Prize; therefore, it is impossible to determine if the Guild's contacts with Alabama motivated her to submit her manuscript. She does not allege that she received a letter from the Guild or that she visited the Guild's website. The record is devoid of facts that connect the Guild's contacts with Alabama and

Plaintiff's decision to submit her manuscripts for the Prize. This lack of nexus undermines Plaintiff's argument. The record reflects that the Guild only engaged in limited direct advertisement in Alabama and maintained a website accessible everywhere. These limited contacts are too attenuated to create personal jurisdiction, especially because the Guild's website is largely passive. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123-24 (W.D. Pa., 1997) (discussing the different levels of interactivity of internet sites and employing a "sliding scale" analysis that makes the relevance of a website in determining personal jurisdiction directly proportional to its interactivity).[1] The record also reflects that Plaintiff sent two manuscripts to the Guild. However, Plaintiff has alleged no facts that show that she was responding to some solicitation or advertisement from the Guild. The fact that Plaintiff unilaterally sent manuscripts from Alabama to Tennessee is not a "contact" for purposes of determining whether the Guild is properly subject to personal jurisdiction in Alabama. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State"). Plaintiff's failure to connect the Guild's contacts with her entry in the Peter Taylor Prize competition shows that the court lacks jurisdiction over the Guild.

Furthermore, the Eleventh Circuit has consistently held that a nonresident defendant that merely advertises itself in the forum state does not purposefully avail itself of the protections of the

---

[1] Though the court is not aware of any direction from the Eleventh Circuit on the effect of an internet presence on personal jurisdiction, several federal courts in Alabama have employed the *Zippo* analysis. *See Butler v. Beer Across America*, 83 F.Supp. 2d 1261, 1268 (N.D. Ala. 2000) (Hancock, J) *Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp. 2d 1250, 1253-54 (M.D. Ala., 2006). Also, the court finds it persuasive that the Fifth Circuit adopted the *Zippo* test in *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999).

forum state's law.  In *Johnston v. Frank E. Basil, Inc.*, 802 F.2d 418 (11th Cir. 1986), the court

stated:

> this Court concludes that an advertisement in an Alabama newspaper offering
> employment opportunities to qualified applicants, said employment to be performed
> entirely outside of Alabama, or the sending off of an agent to interview an Alabama
> resident. . . for such employment at the instigation of that resident does not satisfy the
> principles espoused by the Supreme Court or the requisites of due process.  Such
> activities do not fall within the realm of purposeful availment of the benefits and
> protections of Alabama laws.  Neither of the defendants resides in, is licensed to do
> business in, or does business in Alabama.  Neither has an office, telephone listing,
> post office box or street address in Alabama.  No bank accounts are maintained in
> Alabama.  The defendants have no customers in Alabama and derive no income from
> within the state.  Neither owns or leases any real property in Alabama.  In addition,
> all the significant events occurred outside the State of Alabama.

802 F.2d at 420; *see also Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir. 2000) (citing

*Johnston* and noting that "placing advertisements in a newspaper is not a sufficient connection to the

forum for in personam jurisdiction").  The similarities between the facts in *Johnston* and the facts

in the present case are substantial enough to convince the court that *Johnston* controls.[2]  Like the

*Johnston* defendants, the Guild resides outside Alabama, does no business in Alabama, has no office

in Alabama, no Alabama bank accounts, no Alabama customers, and no Alabama phone number.

The court cannot discern that the Guild sought any benefit or protection of Alabama law.  In fact,

---

[2]The court is aware of *SEC v. Carrillo*, 115 F.3d 1540 (11th Cir. 1997), in which the court
held that a nonresident corporate defendant was subject to national jurisdiction because it placed
long-running advertisements in airline magazines, mailed direct solicitations to United States
residents, maintained bank accounts in the United States, and mailed at least one stock certificate
to the United States. 115 F.3d at 1544.  *Carrillo* is less similar to the present case than *Johnston* and
is therefore distinguishable.  As an initial matter, *Carrillo* involves a foreign defendant and the use
of "national," as opposed to state-specific, contacts.  Furthermore, the *Carrillo* defendants clearly
aimed to profit directly from their contacts in the United States.  They both mailed certificates to
American residents and established bank accounts to receive funds in the United States.  The present
case is more similar to *Johnston* because the Guild's contacts with Alabama are both less numerous
than the *Carrillo* defendants' national contacts and are not directly aimed at making money.

while the *Johnston* defendants' contacts with Alabama were ultimately aimed at their business interests elsewhere, the record shows that the Guild is not involved in any sort of business. This fact shows that the Guild could benefit even less from its Alabama contacts than the *Johnston* defendants. Accordingly, consistent with the controlling precedents, the court finds that the Guild did not purposefully avail itself of the protections of Alabama law.

Little need be said about the third factor. Because the court has found that the Guild's contacts are not substantially related to Plaintiff's claims and do not represent a purposeful availment of the privilege of conducting activities in Alabama, it reasonably follows that it is not foreseeable that the Guild would be haled into court in Alabama. The court finds that all three factors of the minimum contacts analysis suggest that the Guild has not had sufficient contact with Alabama to allow the court to assert personal jurisdiction over it consistent with due process.

> **b.** **"Notions of Fair Play and Substantial Justice"**

Due process also requires that the court consider whether it is fair to find that the Guild is subject to personal jurisdiction in an Alabama court. The Supreme Court has stated five factors to be addressed in determining when asserting personal jurisdiction is fair: (1) the burden litigating in the forum state places on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in convenient, effective relief; (4) the interstate judicial system's interest in efficient dispute resolution; and (5) the shared interests of the states in furthering their substantive policies. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980) (citations and quotations omitted). These factors do not apply independently of the minimum contacts analysis; rather, in this case, the court will analyze them to see if they "establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at

477; *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-80 (1984) (finding that the "plaintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum").

The court finds nothing in the fairness factors that warrants lowering the threshold of minimum contacts otherwise required. It is burdensome to make the Guild travel to Alabama to litigate. Plaintiff has not directed the court to any interest that Alabama has in providing a forum to this dispute. As to the third factor, while it certainly is a burden to make Plaintiff litigate her claims elsewhere, it is less unfair to make Plaintiff litigate outside of Alabama than it is to make the Guild litigate in Alabama.[3]

On the whole, the analyses of the fairness factors show that asserting personal jurisdiction over the Guild does not comport with traditional notions of fair play and substantial justice. In light of the unfairness of haling the Guild into court here and its lack of purposeful contacts with Alabama, the court finds that it lacks *in personam* jurisdiction over the Guild. Accordingly, Plaintiff's claims against the Guild are due to be dismissed under Federal Rule of Civil Procedure 12(b)(2).

## II. Failure to State a Claim

Even if the court has jurisdiction over the Guild, Plaintiff has failed to state a claim for which this court can grant relief. Plaintiff's Third Amended Complaint asserts that the Guild is liable to

---

[3]The fourth and fifth factors do not appear to be relevant to this dispute.

Plaintiff only for the tort of negligent entrustment.[4]   Under Alabama law, the tort of negligent

entrustment has five elements:

> (1) Proof that the entrustee was incompetent, inexperienced or reckless; (2) that the entrustor knew or had reason to know of the entrustee's condition of proclivities; (3) that there was an entrustment of the chattel; (4) that the entrustment created an appreciable risk of harm to the plaintiff and a relational duty on the part of the defendant; (5) that the harm to the plaintiff was proximately or legally caused by the negligence of the defendant.

*Brown v. Vanity Fair Mills, Inc.*, 277 So. 2d 893, 896 (Ala. 1973) (quotations and citations omitted).

In this case, Plaintiff has alleged that the Guild negligently entrusted her manuscript to people that

infringed upon her copyright in the manuscript.   The Guild makes two arguments in response: (1)

Plaintiff's allegations are so speculative and conclusory that they cannot form the basis of claim for

relief (Doc. # 59-2 at 15) and (2) a manuscript cannot, as a matter of law, satisfy the "chattel"

requirement of a negligent entrustment claim under Alabama law.   (Doc. # 71 at 7-8).   The court

finds that the Guild's second argument is correct.[5]

Alabama courts have consistently held that the chattel element of negligent entrustment

requires a "dangerous instrumentality," not just a piece of movable property.   *See Matkin v. Country*

*Skillet Poultry Co.*, 514 So. 2d 1356, 1358 (Ala. 1987) (holding that the doctrine of negligent

entrustment requires "dangerous instrumentalities").   In *Matkin*, the Alabama Supreme Court noted

---

[4]Plaintiff's Third Amended Complaint does not clearly assert a claim against the Guild for copyright infringement.   Additionally, Plaintiff's response brief discusses only negligent entrustment and not copyright infringement, even though the Guild asserted that Plaintiff failed to state a copyright claim in its brief.   (Doc. # 59-2 at 14).   If Plaintiff intended to make a copyright infringement claim against the Guild, she has abandoned it and the court need not address it in this opinion.

[5]The court will not rule on the Guild's first assertion because its second argument is dispositive and does not require the court to address factual questions at this early stage of litigation.

9

that "[a]ll of the Alabama cases heretofore applying the doctrine of negligent entrustment have related to vehicles, boats, firearms or explosives.  *Id.* (citations omitted); *see also Elledge by and through Pendergrass v. Mathis*, 686 So. 2d 317, 319 (Ala. Civ. App. 1996) (stating "[w]e would note that the category of 'chattels' in regard to negligent entrustment claims as essentially been limited to automobiles, boats, firearms, and explosives" and finding that an air rifle was not a dangerous instrumentality in that case); *Wilbanks v. Brazil*, 425 So. 2d 1123, 1125 (Ala. 1983) (finding that a golf club was not a dangerous instrumentality in the hands of an eight-year-old).  One of the issues in *Matkin* was whether 66,000 chickens constituted a dangerous instrumentality.  The court answered this question negatively, stating:

> the Matkins readily admitted, in their memorandum in opposition to the defendant's motion for summary judgment, that 'This is not a case involving killer chickens....' Although aware that 66,000 chickens can produce a prodigious amount of dung, we are of the opinion that it is not negligent to entrust them to a poultry farmer.

*Matkin*, 514 So. 2d at 1358.

The chattels at issue in this case are manuscripts of two novels.  If an air rifle, 66,000 chickens, or a golf club do not qualify as dangerous instrumentalities, the court cannot conceive of a scenario under which a manuscript could qualify.  Because a manuscript is not a dangerous instrumentality as a matter of law, the Guild cannot be liable for negligent entrustment under Alabama law.  Accordingly, the court finds that Plaintiff has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## III.    Conclusion

The court does not have personal jurisdiction over the Guild.  Furthermore, the court finds that Plaintiff's Third Amended Complaint fails to state a claim for which the court can grant relief.

Accordingly, for these independent reasons, Plaintiff's claims against the Guild are due to be dismissed without prejudice.  A separate order in accordance with this Memorandum Opinion will be entered.

      **DONE** and **ORDERED** this \_\_\_\_\_12th\_\_\_\_\_ day of June, 2008.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

11